UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DAVID K. LEE,

                     Plaintiff,

v.                                                   Case No.  5:05-cv-225-Oc-GRJ

JO ANNE B. BARNHART, Commissioner
of Social Security,

                     Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for a period of disability and disability insurance benefits.  (Doc. 1.)  The Commissioner has answered (Doc. 5) and both parties have filed briefs outlining their respective positions.  (Docs. 12 & 13.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED.**

## I. PROCEDURAL HISTORY

On June 26, 2002, Plaintiff filed an application for a period of disability and disability insurance benefits claiming a disability onset date of March 31, 2000. (R.43-55.)  Plaintiff's application was denied initially (R. 38-40), and upon reconsideration. (R. 34-36.)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 33.)  The ALJ conducted Plaintiff's administrative hearing on July 6, 2004 (R. 197-215) and issued a decision unfavorable to Plaintiff on September 9, 2004.

(R.17-23.)  The Appeals Council denied Plaintiff's request for review on March 10, 2005.

(R. 4-6.)  On May 9, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial

evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do

more than merely create a suspicion of the existence of a fact, and must include such

relevant evidence as a reasonable person would accept as adequate to support the

conclusion.[2]

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.[3] The district court must view the evidence as a whole, taking

into account evidence favorable as well as unfavorable to the decision.[4] However, the

district court will reverse the Commissioner's decision on plenary review if the decision

applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[1] See 42 U.S.C. § 405(g).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[5]   The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[6]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[11] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[12] Fifth, if a claimant's impairments (considering her

---

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

[12] 20 C.F.R. § 404.1520(e).

RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[17] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy

---

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (internal citations omitted).

[16] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[17] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[18] Walker at 1003.

that the claimant can perform.[19] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[20] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[21]

### III. SUMMARY OF THE EVIDENCE

Plaintiff was born on November 6, 1959 and was forty-four (44) years old at the time of the hearing. (R. 200.) Plaintiff completed the tenth grade and has a limited ability to read and write English. (R. 201.)  Plaintiff has past relevant work history as a carpenter, roofer and laborer. (R. 48.) Plaintiff contends that he has been unable to work since March 31, 2000 (R. 43) due to severe neck, back, leg, knee and shoulder pain. (R. 47).

Plaintiff was first treated by an orthopaedist, Dr. Mark Beckner, at Jewett Orthopaedic clinic on May 11, 2000. (R. 119) Dr. Beckner ordered an MRI of Plaintiff's lumbar spine, which indicated a degenerated disc at L 4-5 with a slight bulge. (R. 119). Dr. Beckner limited Plaintiff to lifting no more than 15 pounds with no repetitive lifting, bending or climbing. (R. 118).  On June 5, 2000, Plaintiff underwent one of two therapy sessions, at which time Dr. Beckner noted that the MRI showed a significant disc protrusion at L 4-5, that Plaintiff's range of motion (hereinafter, "ROM") was diminished and painful, and his 15 pound lifting limitation and other restrictions continued. (R. 117).

[19] Wolfe at 1077-78.

[20] See id.

[21] See Doughty at 1278 n.2.

5

On July 27, 2000, Dr. Beckner referred Plaintiff to Dr. Carlos Jassir for a pain management consultation. (R. 86) Dr. Jassir noted that Plaintiff injured his back when falling from a roof on March 31, 2000 and that Plaintiff had undergone conservative treatment and physical therapy with Dr. Beckner.  Dr. Jassir further noted that Plaintiff's pain level was at the level of 9 and that Plaintiff experienced worsened levels of pain after long periods of walking, sitting and driving. Dr. Jassir recommended a series of lumbar epidural injections. (R. 82-86.)

On August 15, 2000, Dr. Beckner noted that Plaintiff had a "modest" response to the epidurals, but noted a 50% improvement in Plaintiff's pain level after two epidurals. Dr. Beckner noted that Plaintiff was using a cane and Plaintiff's back was stiff and painful. (R. 114.) On August 29, 2000, Plaintiff underwent three epidural shots; however, the pain in Plaintiff's leg increased and Dr. Becker stated that Plaintiff should consider surgery. (R. 113.)  Dr. Beckner performed a left laminectomy and diskectomy with medial facetectomy at L5-6 on October 11, 2000.  Dr. Beckner's post-operative diagnosis was that Plaintiff suffered from a herniated disk and lateral stenosis at L5-6. (R. 112.)

Following surgery, Plaintiff continued to experience pain, Dr. Beckner placed Plaintiff on temporary total disability (R.111) and Dr. Beckner ordered another MRI, which revealed severe disc degeneration. (R. 110.) On February 20, 2001, Dr. Beckner noted that Plaintiff's condition worsened and on March 28, 2001, Plaintiff underwent further spinal surgery by Dr. Beckner which included wide decompression at L5-6 with posterolateral fusion, posterior interbody fusion, and cage placement at L5-6, with an iliac crest bone graft and placement of a bone growth stimulator. (R. 103.)  At a post-

operative checkup, Plaintiff was noted to be temporarily disabled by Dr. Beckner. (R. 102.)

After Plaintiff continued to complain of pain, Dr. Beckner performed a CT myelogram to determine if there was any neural compression, (R. 99), but the results showed no evidence of nerve root sheath displacement. On August 17, 2006, Dr. Beckner determined there was nothing more he could do for Plaintiff, noted that Plaintiff was on light duty status and scheduled a functional capacity evaluation (hereinafter, "FCE"). (R. 98.) On September 27, 2001, Dr. Beckner reviewed the results of the FCE with Plaintiff and classified Plaintiff in the light/medium duty classification. (R. 96.) Dr. Beckner noted that Plaintiff would have to permanently modify his work status. (R. 96.)

On November 14, 2001, Plaintiff obtained a second orthopaedic opinion from Dr. Michael Broom who recommended another MRI. (R. 175-176.) On November 30, 2001, Dr. Broom reviewed the MRI with Plaintiff and noted a protrusion extending into the left foramen at L2-3, which may have been irritating a left L3 nerve root. (R. 177.) After continuing with the epidural steroid injections, Dr. Broom noted that the injections only provided temporary relief and Dr. Broom discussed additional surgery with Plaintiff. (R. 174.)

On June 20, 2002, Dr. Broom performed a third spinal surgery on Plaintiff which included: removal of rod/pedicle screw construct at L4-5; L2-3 laminectomy with left internal foraminotomy and exiting nerve root decompression; bilateral lateral fusion at L2-3, L3-4; bilateral segmental pedicular screw instrumentation at L2-5; right posterior iliac crest bone graft; and insertion of EBI electrical fusion stimulator. (R. 172.)  On August 21, 2002, Plaintiff had increased his walking to about a mile; x-rays indicated a

good implant position with healing of the fusion; he was prescribed a Medrol Dosepak for rebound inflammation with Zanaflex to help with sleep. Dr. Broom continued to keep Plaintiff on a non-work status. (R. 170)

On January 8, 2003, after continued complaints of pain, Dr. Broom requested another lumbar MRI and doubled the dosages of Plaintiff's Hydrocodone and Vistaril. (R. 167.)  Throughout several of Plaintiff's following visits, beginning January 20, 2003, Plaintiff was kept on a non-work status and Plaintiff was continuing to receive epidural steroid injections. (R. 164.)

On March 31, 2003, Plaintiff's lower back pain seemed to benefit from the epidural steroid injection, although his leg symptoms seemed to have worsened. (R. 162.) Plaintiff continued to take Norco and Lidoderm and Dr. Broom suggested Neurontin for pain and to keep active within his pain tolerances. (R. 162.) Dr. Broom placed Plaintiff at MMI with a total impairment rating of 18% after three lumbar surgeries and Dr. Broom restricted Plaintiff from activities involving frequent bending, twisting, squatting, climbing and lifting over 10 pounds, with breaks from prolonged walking and standing. (R. 162.)

On July 27, 2003, Plaintiff underwent an EMG study of his left lower extremity by Dr. Broom's partner, Dr. Marc Gerber. (R. 192.) Dr. Gerber noted that there was nothing to suggest clinical evidence of focal lumbosacral radiculopathy or a peripheral nerve problem. (R.192.) On September 9, 2003, Dr. Gerber noted that Plaintiff was still not working and continued to have persistent chronic back pain and that Plaintiff felt that his pain was 7 out of 10, but would be worse without pain medications, which allow him to function. (R. 190.) It was noted that Plaintiff walked with a straight cane and mild

8

antalgia. (R. 190.) Dr. Gerber referenced the earlier EMG study in support of continued palliative care and suggested another epidural injection; he gave Plaintiff two trigger point injections. (R. 190 & 191.) Dr. Gerber opined that Plaintiff would likely have continued chronic pain symptoms. (R. 189.)

At the hearing on July 6, 2004, Plaintiff testified that he has severe lower back pain and that his left leg gives out on him. (R. 207.) Plaintiff further testified that the pain is constant and that he has difficulty sleeping due to the pain. (R. 208). Plaintiff testified that he can only sit for about 20 minutes and then must get up and walk around and when Plaintiff stands, he must put all of his weight on his right leg to avoid putting pressure on his left leg. As such, Plaintiff testified that he uses a cane for traveling short distances and a scooter when going for longer walks. (R. 209.)  Plaintiff also testified that he cannot drive and that due to the pain when he bends, he has difficulty putting on his shoes. (R. 209.)

The ALJ found that Plaintiff's testimony that he cannot work to be somewhat exaggerated and disproportionate to the diagnostic and clinical findings in the record. (R. 20.) In particular, the ALJ did not find credible Plaintiff's allegations that he can sit for only twenty minutes. Although, the ALJ noted that Dr. Beckner had stated Plaintiff could perform light to medium work (R. 96) the ALJ did not give controlling weight to that opinion because it was rendered prior to the surgery that was performed by Dr. Broom. Instead, the ALJ relied upon the opinion of Dr. Broom. Following Plaintiff's third and final surgery, Dr. Broom noted Plaintiff's only restrictions were that he could not lift over 10 pounds, could not engage in frequent bending, twisting, squatting, climbing and lifting, and could not engage in prolonged walking or standing without breaks. (R. 162.)

The ALJ noted that neither Dr. Broom nor Dr. Beckner ever indicated that Plaintiff was restricted from sitting. Moreover, the ALJ noted that Dr. Broom opined that Plaintiff was capable of sedentary work. (R. 20.)

The ALJ found that Plaintiff retained the residual functional capacity to occasionally lift/carry up to 10 pounds, walk/stand about four hours of an 8-hour workday, sit for up to six hours per 8-hour workday, and should avoid repetitive bending, lifting, twisting or climbing.  (R. 20.) The ALJ's RFC analysis took into consideration the opinion of Dr. Broom as well as the State Agency physicians at the reconsideration level of adjudication, who opined that the Plaintiff was capable of sedentary work. (R. 20.) The ALJ stated that great weight had been given to Dr. Broom's opinion, as he was the Plaintiff's most recent treating source and Dr. Broom's assessment from June 2004 represented the most recent evaluation of the Plaintiff's overall capabilities.  The ALJ noted that at the March 2003 evaluation, Dr. Broom did not impose any restrictions with regard to the Plaintiff's ability to sit and encouraged Plaintiff to walk for exercise.  As such, the ALJ found there was no medical basis for Plaintiff's allegations that he can sit for no more than 20 minutes and cannot drive. (R. 20.) Therefore, the ALJ adopted the State Agency's opinion that the Plaintiff can sit for up to six hours and walk/stand up to four hours per day. (R. 21.) The ALJ assigned lesser weight to the opinion of Dr. Becker's and the opinion of the State Agency physician - that Plaintiff was capable of performing light to medium work - because these opinions were issued prior to the third surgery performed by Dr. Broom. (R. 21.)

The ALJ found that Plaintiff could not perform his past relevant work as a carpenter or roofer because those jobs required that Plaintiff walk/stand extensively and

lift/carry weights in excess of 10 pounds, as well as repetitively bend, twist, lift and climb. (R. 21.)  The ALJ then used the Medical-Vocational Guidelines (the "grids") to find that Plaintiff was not disabled because Plaintiff could perform the demands of the full range of sedentary work. (R. 21.) The ALJ did not consult a vocational expert because the ALJ found that Plaintiff had the exertional residual functional capacity to perform substantially all of the seven primary strength demands required by work at the sedentary level of exertion and that there were no nonexertional limitations. (R. 21.)

## IV.  DISCUSSION

Plaintiff argues that the ALJ improperly rejected the Plaintiff's testimony regarding his functional limitations without considering the record evidence as a whole and without articulating explicit and adequate reasons for doing so. (Doc. 12.)  Plaintiff contends that the ALJ erred because there is no evidence in the record from any of Plaintiff's treating physicians that contradicts Plaintiff's testimony about how long Plaintiff can sit, walk or stand. Thus, Plaintiff concludes by arguing that the ALJ failed to articulate specific and clear and convincing reasons for the unfavorable decision. Lastly, the Plaintiff argues that the ALJ erred because he did not consider the effect of Plaintiff's inability to bend or stoop on his ability to perform the full range of sedentary work.

## A.  The ALJ Properly Rejected Plaintiff's Testimony Concerning His Limitations

The ALJ relied upon certain functional limitation statements from Plaintiff's treating surgeon, Dr. Broom, and from a nonexamining medical reviewer to conclude that Plaintiff could perform work at the sedentary level of exertion. The ALJ appropriately accorded great weight to the opinion of Dr. Broom because it represented

the most recent evaluation of Plaintiff's overall capabilities. The ALJ relied on the fact that Dr. Broom did not impose any restriction on the Plaintiff's ability to sit.  Furthermore, the ALJ observed that there was no medical basis for the Plaintiff's allegations that he can sit for no more than 20 minutes and cannot drive. As such, the ALJ found the Plaintiff's testimony, compared to the medical evidence, was somewhat exaggerated and disproportionate to the diagnostic and clinical findings in the record. (R. 20.)

In making this determination, the ALJ clearly articulated the basis for the unfavorable decision. The Eleventh Circuit has held that credibility determinations are the province of the Commissioner and not of the courts.[22] Here, although the ALJ noted that Dr. Beckner had opined that Plaintiff could perform light to medium work (R. 96), the ALJ  did not give controlling weight to that opinion because it was rendered prior to the surgery performed by Dr. Broom.  Instead, the ALJ gave more weight to Dr. Broom's medical opinion, which restricted Plaintiff to lifting no more than 10 pounds, from engaging in frequent bending, twisting, squatting, climbing and lifting, and from engaging in prolonged walking or standing without beaks. (R. 162.) The ALJ observed that a state agency medical expert also concluded that Plaintiff could perform sedentary work.  Thus, the ALJ's analysis of Plaintiff's functional limitations was entirely consistent with the limitations imposed by the physician, who performed Plaintiff's most recent surgery. And the ALJ's RFC analysis was not at odds with the views of both treating

---

[22] See Bloodsworth v. heckler, 703 F.2d 1233, 1242 (11th Cir. 1983)..

orthopedic surgeons, both of whom opined that despite Plaintiff's pain he is capable of some level of work related activities.[23]

In sum, it is not the function of this Court to re-weigh the evidence or substitute its judgment for that of the ALJ even if the Court finds that the evidence preponderates against the Commissioner's decision. The fact that the ALJ did not find a limitation on Plaintiff's ability to sit for only twenty (20) minutes was not contrary to the evidence. Indeed, the limitations found by the ALJ are consistent with the restrictions imposed by Dr. Broom, one of Plaintiff's treating physicians, and the physician who most recently treated the Plaintiff.  The ALJ properly concluded based upon substantial evidence that Plaintiff met all of the seven strength requirements for work at the sedentary level and there was no medical evidence to establish the existence of any nonexertional limitations that would significantly impact the Plaintiff's ability to perform work at the sedentary level.[24]  As such, the ALJ's finding with respect to the issue of whether the Plaintiff was limited to sitting for only twenty minutes was supported by substantial evidence and was analyzed under the proper legal standard. Because the ALJ concluded that there were no limitations that precluded work at the sedentary occupational base the ALJ did not err by relying upon the Grids instead of calling a vocational expert to testify.

---

[23] Dr. Beckner opined that Plaintiff could perform light to medium work and Dr. Broom opined that Plaintiff could only perform sedentary work. Neither of these views are inconsistent with the ALJ's conclusion that Plaintiff could perform the full range of work at the sedentary level.

[24] Sitting is an exertional limitation and as such, any restrictions on sitting have been contemplated by the Medical-Vocational Guidelines and are properly included in the ALJ's determination of Plaintiff's residual functional capacity. 20 C.F.R. § 416.969. *See, also,* Phillips v. Barnhart, 357 F. 3d 1232, 1242 n.11 (11th Cir. 2004)("Exertional limitations affect an individual's ability to meet the seven strength demands of a job: sitting, standing, walking, lifting, carrying, pushing, and pulling.").

Accordingly, for all of these reasons, the Court concludes that the ALJ adequately articulated reasons, based upon substantial evidence, for discrediting Plaintiff's subjective allegations of disabling symptomatology.

**B.** **Plaintiff Did Not Have A Stooping Limitation That Precluded Work At the Sedentary Level**

As a final argument, Plaintiff complains that he had a stooping limitation that precluded performance of the full range of sedentary work and that, as such, the ALJ should have called a vocational expert instead of relying upon the Grids. The Plaintiff's argument misinterprets the medical evidence, misconstrues the RFC analysis performed by the ALJ and confuses Plaintiff's alleged inability to stoop occasionally as the same as a restriction on repetitive bending.[25]

The ALJ concluded that Plaintiff should avoid, *inter alia,* repetitive bending, a finding that was consistent with the restrictions imposed by Dr. Broom. The ALJ did not find - as Plaintiff asserts - that Plaintiff could not stoop occasionally. Notably, there is no medical evidence or limitations from a medical doctor that restricted Plaintiff from stooping occasionally.

The flaw in Plaintiff's argument is that an inability to engage in repetitive bending does not preclude occasional stooping. As such, a restriction on *repetitive* bending does not significantly erode the sedentary occupational base. Work at the sedentary level, which is performed primarily in the seated position, does not require significant

---

[25] Stooping is a type of bending in which a person bends his or her body downward and forward by bending the spine at the waist. *See,* SSR 83-10.

14

stooping.[26] While a complete inability to stoop would significantly erode the unskilled sedentary occupational base, a restriction of occasional stooping would only minimally erode that occupational base.[27]

Accordingly - contrary to Plaintiff's argument - the ALJ's finding that Plaintiff could not engage in repetitive bending does not preclude the performance of the full range of sedentary work because sedentary work requires only occasional stooping. As such, because Plaintiff's argument improperly construes a restriction on repetitive bending to mean the same as a restriction on occasional stooping, there is no reason to remand this issue to the ALJ for further consideration. And because a restriction on repetitive bending does not erode the sedentary occupational base, there was no need for the ALJ to call a vocational expert.

## V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 25, 2006.

GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel

---

[26] *Id.*

[27] *See,* SSR 96-9p.

15